UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLORESCIENCE, INC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>STEPHEN BOUCHE, ERIC D. NIELSEN, and THE NIELSEN LAW FIRM, P.C.,<br><br>　　　　　　　　　　Defendants. | Case No.: 20cv595-GPC(AGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[Dkt. No. 2.]** |

Before the Court is Plaintiff's motion for temporary restraining order. (Dkt. No. 2.) Defendants filed a response on April 2, 2020.[1] (Dkt. No. 9.) Plaintiff filed a reply on April 6, 2020. (Dkt. No. 14.) A telephonic hearing was held on April 8, 2020. (Dkt. No. 16.) Deanna Lucci, Esq., James Brown, Esq, and Andrew Gordon, Esq. appeared on behalf of Plaintiff and Eric Nielsen, Esq. and Tiffany Chung, Esq. appeared on behalf of Defendants. (*Id.*)

---

[1] Defendants assert they reserve the "right to contest this Court's subject matter jurisdiction, personal jurisdiction, and to plead without waiver all other matters that will shortly be set forth in Defendants' 12(b)(6) motion." (Dkt. No. 9 at 1.)

1

Based on the reasoning below, the Court DENIES Plaintiff's motion for temporary restraining order.

**Factual Background**

Plaintiff Colorescience ("Plaintiff") is a small corporation, located in San Diego, that develops, markets, and sells skin care products. (Dkt. No. 1, Comp. ¶¶ 1, 8.) It provides medical, dental, vision, and prescription drug benefits to employees and their dependents and these benefits are self-insured by Plaintiff. (*Id.* ¶ 9.) Plaintiff is the Plan Administrator of the Colorescience Welfare Benefit Plan ("Plan"). (*Id.* at p. 2.) The Plan is an ERISA-covered welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A), and Plaintiff is a "fiduciary" and "administrator" as defined under ERISA, 29 U.S.C. §§ 1002(16) and (21). (*Id.* ¶ 1.)

Defendant Stephen Bouche ("Stephen") is the son of Deborah Bouche ("Deborah"), who is an employee of Colorescience. (*Id.* ¶ 11.) Effective January 1, 2018, Stephen was enrolled for coverage under the Plan as Deborah's dependent and became a Plan Participant under the Plan. (*Id.*) The Plan defines Plan Participants to mean employees or their dependents. (*Id.* ¶ 10.)

According to Plaintiff, around February 25, 2014, Stephen Bouche was injured in an accident which occurred in Houston, Texas on the premises of Quantum Hospitality, LLP ("Quantum Hospitality"). (*Id.* ¶ 12.) On August 5, 2015, Stephen Bouche filed a civil action in the District Court of Harris County, Texas ("Harris County Tort Action") against Quantum Hospitality for negligence that caused the alleged injuries sustained by him in the February 25, 2014 accident. (*Id.* ¶ 13.) Defendant Eric Nielsen, ("Mr. Nielsen") of the Defendant Nielsen Law Firm is counsel of record for Stephen in the Harris County Tort Action. (*Id.* ¶ 14.) Around February 2018, Bouche had back surgery to address the injuries he suffered as a result of his accident on February 25, 2014. (*Id.* ¶ 15.) The Plan paid $477,093.98 to the medical providers and professionals who performed the back surgery. (*Id.* ¶ 16.)

Under the terms of the Plan, Plaintiff claims it is entitled to a subrogation lien to recover 100% of the benefits paid when a recovery through settlement, judgment, award or other payment is received by Plan Participant. (*Id.* ¶¶ 17-19.) On April 19, 2019, Plaintiff's counsel sent a letter to Mr. Nielsen along with a copy of the Plan notifying him of the subrogation lien arising under the terms of the Plan, Plaintiff's intent to exercise such lien, its right to an equitable lien on any benefits received by Mr. Bouche in the Harris County action and the right to be reimbursed for the medical benefits. (*Id.* ¶ 20; *id.*, Ex. B.) In May, 2019, Plaintiff filed a petition to intervene in the Harris County state action "(a) in order to provide notice to the parties of the provisions of the Plan . . . and of the existence of its potential subrogation and equitable lien and right to reimbursement of medical expenses paid to or on behalf of Stephen Bouche and (b) to enable it to monitor the Harris County Tort Action so it would have prompt access to information concerning any recovery by Mr. Bouche in that action by way of settlement or otherwise." (*Id.* ¶ 21.) Trial in the Harris County Tort Action was scheduled to commence in late February 2020 but on February 26, 2020, Plaintiff's counsel learned that a settlement of the Harris County state action had been reached. (*Id.* ¶ 22.) On February 27, 2020, Plaintiff's counsel wrote a letter to Mr. Nielsen and "requested additional details concerning the settlement, reminded Mr. Nielsen of the Plan's subrogation lien, and demanded repayment by Mr. Bouche of the $477,093.98 in medical benefits which had been paid by the Plan." (*Id.* ¶ 23.) In response, Mr. Nielson, requested Plaintiff's counsel to provide documents confirming the $477,093.98 medical benefits paid by the Plan." (*Id.*) On March 3, 2020, Plaintiff's counsel provided Mr. Nielsen with documents confirming the $477,093.98 medical benefits paid by the Plan. (*Id.* ¶ 24; *id.*, Ex. D.) On March 23, 2020, a telephone conversation took place between Mr. Nielsen and Plaintiff's counsel where Plaintiff's counsel learned that the amount of the settlement in the Harris County Tort Action was $2 million and it was Mr. Nielson's position that Plaintiff did not have an enforceable subrogation lien and/or that it had waived that lien. (*Id.* ¶¶ 25-26.)

In response, Defendants present the following facts in dispute.  Stephen Bouche declares that he was born on July 30, 1987 and was more than 26 years old when he had his slip and fall accident in Houston, Texas on February 25, 2014.  (Dkt. No. 9-3, Stephen Bouche Decl.)  He also claims he was never a Plan Participant even prior to the age of 26.  (*Id.*)  Deborah state that she is Stephen's mother and he was mentally and physically capable of sustaining his own living before and after the age of 26 and has never represented anything otherwise to Plaintiff.  (Dkt.  No. 9-5, Deborah Bouche Decl.)

Mr. Nielsen states that when Plaintiff filed its First Amended Intervention in the Harris County Tort Action on May 29, 2019, it knew trial was set for February 25, 2020.  (Dkt. No. 9-4, Nielsen Decl.)  Trial began on February 25, 2020 and Stephen Bouche and Quantum Hospitality announced ready.  (*Id.*)  Plaintiff failed to appear at trial or announce ready.  (*Id.*)  During voir dire, the Harris County Tort Action settled.  (*Id.*)  A final judgment will be entered dismissing Stephen Bouche's claims and Quantum Hospitality's counterclaims and dismissing Colorescience's intervention for want of prosecution.  (*Id.*)  Stephen Bouche was involved in a severe car crash in October 2014, 8 months after the slip and fall in February 2014 which caused new low back injuries.  (*Id.*)  Based on the testimony of Stephen's treatment physicians and the medical specialists hired by Quantum Hospitality in the Harris County Tort Action, the medical expenses in 2018 is not causally related to the slip and fall on February 25, 2014.  (*Id.*)  Finally, under the terms of the settlement in the Harris County Tort Action, Defendants are contractually obligated to hold the amount of Plaintiff's claim in trust until the entitlement to the funds is resolved by settlement or final judgment.  (*Id.*; Dkt. No. 9-2, Nielsen Decl., Ex. B.)

In reply, Plaintiff disputes Defendants' facts stating that Deborah enrolled Stephen as a Dependent during the open enrollment period in December 2017 and was a participant as of January 1, 2018.  (Dkt. No. 14-1, Plummer Decl. ¶ 2.)  Moreover, Mr. Nielsen asserted Stephen was eligible for enrollment and coverage as an incapacitated Defendant.  (*Id.* ¶ 6.)  Plaintiff argues that the record in the Harris County Tort Action shows that Stephen did not suffer a car crash in October 2014, and that if a car crash

4

occurred, it was prior to his slip and fall in February 2014. Finally, the state court record also reveals that Stephen's alleged injuries and subsequent surgery were directly related to his accident in February 2014 and not a car crash.

## Discussion

Plaintiff seeks a TRO "enjoining Stephen Bouche, [Mr.] Nielsen, the Nielson Law Firm P.C., and any other party from dissipating, transferring, pledging, spending, disposing of, or encumbering the settlement proceeds received or to be received by or on behalf of Stephen Bouche from the action pending in the District Court for Harris County, Texas captioned *Stephen Bouche v. Quantum Hospitality, LLP*, Cause No. 45760." (Dkt. No. 2.)

**A.     Legal Standard on TRO**

Federal Rule of Civil Procedure 65 authorizes a court to enter a temporary restraining order or preliminary injunction. Fed. R. Civ. P. 65. The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy

5

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs. *See Cottrell*, 632 F.3d at 1135; *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

**1. Likelihood of Success on the Merits**

Plaintiff argues likelihood of success on the merits because the Plan paid medical payments on behalf of Stephen in the amount of $477,093.98 and he will receive $2 million in settlement proceeds based on personal injury claims against a third party for the injuries which caused him to incur the medical expenses paid by the Plan. In response, Defendants argue Plaintiff has no right of subrogation under the Plan because Stephen Bouche is not a Plan Participant and Plaintiff has not demonstrated that the alleged medical payments it paid for the surgery in 2018 was caused by the slip and fall that occurred on February 25, 2014.

Here, the Plan provides for subrogation rights requiring the Plan Participant to reimburse the Plan for medical expenses if the Plan Participant recovers benefits from injuries caused by a third party.[2] However, to be subject to the terms of the Plan, one

---

[2] Section 13.02 of the Plan provides,
> 1. As a condition to participating in and receiving benefits under this Plan, the Plan Participant(s) agrees to assign to the Plan the right to subrogate and pursue any and all claims, causes of action or rights that may arise against any person, corporation and/or entity and to any Coverage to which the Plan Participant(s) is entitled, regardless of how classified or characterized, at the Plan's discretion.
> 2. If a Plan Participant(s) receives or becomes entitled to receive benefits, an automatic equitable lien attaches in favor of the Plan to any claim, which any Plan Participant(s) may have against any Coverage and/or party causing the sickness or injury to the extent of such conditional payment by the Plan plus reasonable costs of collect.

(Dkt. No. 2-3, Plummer Decl., Ex. 1 at 69-70.) Section 13.03(1) provides that, the

> Plan shall be entitled to recover 100% of the benefits paid . . . .The Plan shall have an equitable lien which supersedes all common law or statutory rules, doctrines, and laws of any State prohibiting assignment of rights which interferes with or compromises in any way the Plan's equitable lien and right to reimbursement." Section 13.01(3) similarly provides that in "the event a Plan Participant(s) settles, recovers, or is reimbursed by any

6

must be a Plan Participant. Under the Plan, a Plan Participant "shall mean any Employee or Dependent who is eligible for benefits under the Plan." (Dkt. No. 2-3, Plummer Decl., Ex. 1 at 24.[3]) A Dependent is defined, among other things, "[a]n Employee's Child who is less than 26 years of age." (*Id.* at 16.) Dependent is also defined as

> An Employee's Child, regardless of age, who was continuously covered prior to attaining the limiting age under the bullets above, who is mentally or physically incapable of sustaining his or her own living. Such Child must have been mentally or physically incapable of earning his or her own living prior to attaining the limiting age under the bullets above. Written proof of such incapacity and dependency satisfactory to the Plan must be furnished and approved by the Plan within 31 days after the date the Child attains the limiting age under the bullets above. The time limit for written proof of incapacity and dependency is 30 days following the original eligibility date for a new or re-enrolling Employee. The Plan may require, at reasonable intervals, subsequent proof satisfactory to the Plan during the next two years after such date. After such two year period, the Plan may require such proof, but not more often than once each year.

(Dkt. No. 2-3, Plummer Decl., Ex. 1 at 16.)

Here, the parties dispute whether Stephen was a Plan Participant. Plaintiff argues that he was a Plan Participant as an incapacitated dependent while Defendants argue that Stephen was never a Plan Participant because he was over 26 years old at the time of the accident and Deborah never represented that he was mentally or physically incapacitated either before or after the age of 26.

---

> Coverage, the Plan Participant(s) agrees to reimburse the Plan for all benefits paid or that will be paid by the Plan on behalf of the Plan Participant(s). If the Plan Participant(s) fails to reimburse the Plan out of any judgment or settlement received, the Plan Participant(s) will be responsible for any and all expenses (fees and costs) associated with the Plan's attempt to recover such money.

(*Id.* at 69.) Finally, section 13.07(1)(e) provides that it "is the Plan Participant(s)' obligation at all times, both prior to and after payment of medical benefits by the Plan: . . . [t]o promptly reimburse the Plan when a recovery through settlement, judgment, award or other payment is received." (*Id.* at 71.)

[3] Page numbers are based on the CM/ECF pagination.

Stephen Bouche was born on July 30, 1987 and turned 26 years old on July 30, 2013. (Dkt. No. 9-3, Stephen Bouche Decl.) At the time of his accident on February 26, 2014, he was over 26 years old. (*Id.*) Deborah Bouche states that she was employed by Colorescience in Houston, Texas and a participant of the Plan. (Dkt. No. 9-5, Deborah Bouche Decl.) She states that she never represented to Plaintiff that Stephen was disabled or physically or mentally incapable of sustaining his own living prior to or after the age of 26. (*Id.*) In fact, she states that she received a letter from the Plan Administrator, Corey Plummer, around August 2018, where he stated that Stephen was not a dependent prior to the age of 26 or any time after the age of 26, did not qualify as a dependent who was "continuously covered" prior to attaining the age of 26, and was not "mentally or physically incapable of sustaining his or her own living" prior to attaining the age of 26. (*Id.; id.*, Ex. A.) The letter explains that Stephen was enrolled as a dependent of Deborah under the Plan effective January 1, 2018; however, based on an audit of his eligibility for coverage, his coverage effective January 1, 2018 was erroneous and notified Deborah that Stephen's coverage would be discontinued effective September 1, 2018. (*Id.*, Ex. A.)

On the other hand, Plaintiff argues that Deborah inquired about coverage for Stephen in early November 2017 and applied during the Plan's open enrollment period in early December 2017 which became effective January 1, 2018. (Dkt. No. 14-1, Plummer Decl. ¶ 2.) In support of her enrollment application for Stephen, Deborah submitted a Social Security determination finding Stephen disabled as of October 2016, (*id.*, Ex. 1), and documentation confirming that Stephen's existing coverage with Blue Cross Blue Shield was ending on December 31, 2017. (*Id.,* Plummer Decl. ¶ 2.) The enrollment determination was made by Healthscope Benefits, Inc., the Plan's third-party administrator. (*Id.*) When Stephen underwent back surgery in February 2018 and charges from the hospital were in excess of $1.2 million, Plaintiff conducted an audit as to Stephen's eligibility for coverage. (*Id.* ¶¶ 3, 4.) During the audit, Plaintiff claims that Mr. Nielsen represented that Stephen was eligible for enrollment and coverage as an

8

incapacitated dependent. (*Id.* ¶ 6; *id.*, Exs. 3, 4.) Whether Stephen was a Plan Participant under the Plan is a disputed question of fact.

Furthermore, Plaintiff replies that even if coverage of Stephen was a mistake, the Plan provides for recovery of payments made in error. Section 10.06C of the Plan provides for recovery payments made due to improper billing, mistake in a proof of loss or enrollment information, or when benefits are paid more than once, the "Plan may recover the amount of the overpayment from the source to which it was paid. . . the Plan Administrator has the right to recover any such erroneous payment directly from the person or entity who received such payment and/or from other payers and/or the Plan Participant or dependent on whose behalf such payment was made." (Dkt. No. 2-3, Plummer Decl., Ex. 1 at 63.) At the hearing, Defendants disputed the applicability of this provision in this case.

Finally, Defendants challenge Plaintiff's entitlement to the settlement proceeds because Plaintiff must show that the surgery in 2018 was caused by the slip and fall that occurred on February 25, 2014. According to Mr. Nielsen, Stephen was involved in a severe car crash in October 2014, 8 months after the slip and fall in February 2014 which caused new low back injuries. (Dkt. No. 9-4, Nielsen Decl.) The testimony of Stephen's treatment physicians and the medical specialists hired by Quantum Hospitality in the Harris County Tort Action show that the medical expenses in 2018 is not causally related to the slip and fall on February 25, 2014. (*Id.*) In reply, Plaintiff argues that Mr. Nielsen's assertion is inconsistent with Stephen's discovery responses and sworn deposition in the Harris County Tort action, (Dkt. Nos. 14-7 to 14-10, Asby Decl., Exs. A-C), as well as Deborah's email response on August 13, 2018 stating that there was no motor vehicle accident, (Dkt. No. 14-6, Plummer Decl., Ex. 5). Additionally, at the hearing, the parties raised additional facts that were not in the record. On this, there is a factual issue as to whether the February 2018 surgery was caused by the slip and fall in 2014.

"In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult question of law or disputed questions of fact." *Int'l Molders' & Allied Workers Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986). At this stage, the Court cannot resolve the factual disputes and concludes that Plaintiff has failed to demonstrate a likelihood of success on the merits. *See SoftMan Prods. Co, LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1093 (C.D. Cal. 2001) (concluding party had not shown likelihood of success on the merits where "each party [made] opposing representations as to a disputed fact" going directly to the central issue in the case); *Hansen Beverage Co. v. Vital Pharm., Inc*., No. 08–CV–1545 IEG (POR), 2008 WL 5427601, at *4 (S.D. Cal. Dec. 30, 2008) (numerous disputes of fact precluded finding that plaintiff was likely to succeed on the merits).

**2. Irreparable Harm**

Plaintiff, as a fiduciary under the Plan, argues because it is only entitled to equitable remedies, irreparable harm will result if the plan assets are dissipated during the litigation. It only seeks to maintain the status quo until final resolution of the case. Defendants claim that Plaintiff cannot demonstrate irreparable harm because any damages sustained by Plaintiff can be easily calculated and satisfied monetarily. Moreover, the TRO relief sought is moot because the settlement agreement contractually requires Defendants to hold the amount of Plaintiff's claim in trust until the entitlement to such funds is resolved by settlement or final judgment. In reply, Plaintiff acknowledges that the draft settlement agreement requires that the amount to satisfy the Plan's claim for reimbursement be set aside. Therefore, it claims that the injunctive relief will require Bouche to do nothing more than it already agreed to do except that the amounts set aside should also include potential collection costs and attorney fees. At the hearing, the parties informed the Court that Defendants filed an interpleader action in Texas state court that morning and the monies had been deposited with the state court.

Section 502(a)(3) of the ERISA authorizes plan fiduciaries to bring a civil action "to obtain other appropriate equitable relief . . . to enforce. . . the terms of the plan." 29

U.S.C. § 1132(a)(3). 29 U.S.C. § 1132(e) provides that the district court has exclusive jurisdiction over actions brought by a fiduciary over Section 502(a)(3) claims.[4] As noted by Plaintiff, under Section 502(a)(3), Plaintiff is able to seek restitution in equity, generally in the form of a constructive trust or equitable lien placed upon any proceeds of the property or money which has been identified as properly belonging to Plaintiffs which can be clearly traced to funds or property in the defendant's possession. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *see also Sereboff v. MidAtlantic Med. Servs., Inc.*, 547 U.S. 356 (2006); *Montanile v. Bd. Of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016). The Court notes that one element to support an equitable remedy is that the funds be traceable to funds in the defendant's possession. *See Knudson*, 534 U.S. at 213.

In *Winter,* the Court underscored the requirement that the plaintiff seeking a preliminary injunction "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original) (citations omitted) (noting Ninth Circuit's "possibility" standard as too lenient).

First, in its TRO, Plaintiff acknowledges that it is its understanding that the settlement proceeds have not yet been paid to Stephen or his counsel. (Dkt. No. 2-1 at 9; Dkt. No. 1, Compl. ¶ 27; Dkt. No. 2-5, Gordon Decl. ¶ 10.) Based on this, the TRO is premature. Next, the Settlement Agreement provides that "Plaintiff represents and warrants that he will instruct his counsel to hold sufficient net settlement funds in trust,

---

[4] **(e) Jurisdiction**
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.
29 U.S.C. § 1132(e).

11

escrow, or other similar account, until such time as any obligation, if any, to reimburse Intervenor for its claims made in the First Amended Petition in Intervention and Notice of Lien are satisfied." (Dkt. No. 9-2, Nielsen Decl., Ex. B at 5-6.) The Settlement Agreement provides that a trust, or escrow be established by Plaintiff's counsel to cover the amount owed to Plaintiff. Plaintiff's concern that Defendants will dissipate, transfer, or spend the settlement proceeds is unfounded. Finally, the amount of medical benefits paid by the Plan has been deposited with the Texas state court further securing the funds from dissipating. Consequently, Plaintiff has not demonstrated a likelihood of irreparable harm in the absence of an injunction.

Plaintiff's citation to cases granting a preliminary injunction is not persuasive as in those cases, the mistaken payment was already in the defendant's possession or some action was being taken to reduce the fiduciary's lien. *See Trustees for Ironworkers St. Louis Dist. Council Pension Trust v. Edwards,* No. 10cv73-DRH, 2010 WL 1418566 (S.D. Ill Apr. 7, 2010) (mistaken payment made to the defendant and deposited into her accounts); *Publix Super Markets, Inc. v. Figareau*, Case No. 8:19-cv-545-T-27AEP, 2019 WL 3326005, at *6 (M.D. Fla. June 12, 2019) (recommending granting preliminary injunction because although funds were in attorney's trust account, defendant was proceeding with a Probate Action seeking to reduce or eliminate the plaintiff's $88,846.39 lien on the settlement funds from the Medical Malpractice Action). Here, the settlement funds are not in Defendants' possession but was deposited with the Texas state court.

Because Plaintiff has failed to demonstrate likelihood of success on the merits and irreparable harm, the Court need not address the remaining *Winter*'s factors of balance of equities and public interest. *See Campbell v. Feld Entm't Inc.,* Case Nos.: 12cv4233-LHK and 13cv233-LHK, 2013 WL 4510629, at *6 (N.D. Cal. Aug. 22, 2013) (because "Plaintiffs have failed to establish a likelihood of irreparable harm and success on the merits, the Court need not reach the remaining *Winters* factors regarding the balance of the equities and the public interest."); *Pey v. Wachovia Mortg. Corp.*, No. 11-2922 SC,

2011 WL 5573894, at *6 (N.D. Cal. Nov. 15, 2011) (Because Plaintiff failed to address the first requirement of likelihood of success on the merits, "the Court need not address whether Plaintiff has satisfied the remaining *Winter* factors.").

### Conclusion

Based on the above, the Court DENIES Plaintiff's motion for temporary restraining order.

IT IS SO ORDERED.

Dated: April 8, 2020

Hon. Gonzalo P. Curiel
United States District Judge