UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLORESCIENCE, INC, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN BOUCHE, ERIC D. NIELSON, and THE NIELSEN LAW FIRM, P.C., <br><br> Defendants. | Case No.: 20cv595-GPC(DEB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **[DKT. NO. 30.]** |

Before the Court is Defendants' motion for summary judgment. (Dkt. No. 30.) Plaintiff filed an opposition and Defendants filed a reply. (Dkt. Nos. 60, 61.) Based on the reasoning below, the Court GRANTS Defendants' motion for summary judgment.

**Procedural Background**

On March 30, 2020, Plaintiff Colorescience, Inc. ("Plaintiff" or "Colorescience"), as Plan Administrator of the Colorescience Welfare Benefit Plan ("the Plan"), filed a complaint seeking to enforce its subrogation lien, a constructive trust and injunctive relief pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), (Dkt. No. 1, Compl.), as well as a motion for temporary restraining order ("TRO") "enjoining [Defendants] Stephen Bouche, [Eric D.] Nielsen, the Nielson Law

Firm P.C., and any other party from dissipating, transferring, pledging, spending, disposing of, or encumbering the settlement proceeds received or to be received by or on behalf of Stephen Bouche from a tort action pending in the District Court for Harris County, Texas captioned *Stephen Bouche v. Quantum Hospitality, LLP*, Cause No. 45760." (Dkt. No. 2.)  The complaint arises due to medical benefits paid by the Plaintiff, as Plan Administrator under an ERISA plan, to Stephen Bouche's medical providers based on injuries he suffered in a slip and fall accident that occurred in Texas in February 2014.  (Dkt. No. 1, Compl.)  Plaintiff seeks to enforce a subrogation lien on the tort recovery Stephen Bouche received in settling the Texas state court case.  (*Id.*)  After full briefing by the parties, and a hearing, the Court denied the TRO on April 9, 2020.  (Dkt. No. 17.)  The Court concluded that Plaintiff had not established irreparable harm as well as a likelihood of success on the merits because there were disputed issues of material fact as to whether Defendant Stephen Bouche was a Plan Participant; (*id.* at 7); the applicability of Section 10.06C of the Plan, (*id.* at 9); and whether the February 2018 surgery related to the injuries he suffered from the slip and fall in February 2014.  (*Id.*)

On April 21, 2020, Defendants Stephen Bouche ("Stephen"), Eric D. Nielsen ("Mr. Nielsen"), and the Nielson Law Firm P.C. (collectively "Defendants") filed a motion to dismiss arguing that Stephen was never a Plan Participant or Dependent as defined under the ERISA Plan; therefore, because ERISA does not apply, the Court lacks personal jurisdiction over Defendants under the equitable enforcement provisions of ERISA to support nationwide personal jurisdiction.  (Dkt. No. 21.)  On June 10, 2020, the Court denied the motion to dismiss because Plaintiff plausibly alleged claims for equitable subrogation and constructive trust.  (Dkt. No. 28.)  In its order, the Court also noted that Defendants relied on evidence outside the complaint but denied Defendants' request to convert the motion to dismiss to a motion for summary judgment because Plaintiff did not have an opportunity to respond to the request.  (*Id.* at 6.)

On August 21, 2020, Defendants filed a third-party complaint against HealthSCOPE Benefits, Inc. ("Healthscope"), the third-party administrator of the Plan. (Dkt. No. 42.) Healthscope filed an answer on September 16, 2020. (Dkt. No. 46.)

During the pendency of this case, on April 9, 2020, Stephen filed an interpleader in the Texas state court case of *Stephen Bouche v. Quantum Hospitality, LLC* and deposited $477,093.98 in the Harris County Registry. (Case No. 20cv1136-GPC(DEB), Dkt. No. 1-2 at 2.) Colorescience subsequently filed a notice of removal to the Southern District of Texas as a Plaintiff in Intervention. (20cv1136-GPC(DEB), Dkt. No. 1.) On April 30, 2020, Colorescience filed an answer and a claim to the interpleaded fund. (*Id.*, Dkt. Nos. 9, 10.) On June 23, 2020, the district court in the Southern District of Texas denied Bouche's motion to remand and granted Colorescience's motion to transfer to this district under the first to file rule. (*Id.*, Dkt. No. 24.) On the same day, the case was transferred to this Court from the Southern District of Texas. (*Id.*, Dkt. No. 25.) On June 29, 2020, the case was low numbered to this case and assigned to the same undersigned judge. (*Id.*, Dkt. No. 27.) On September 25, 2020, the Court granted Plaintiff's motion to consolidate with Case No. 20cv1136-GPC(DEB) as well as a request to transfer registry funds of $477,093.98 plus any accrued interest, from the Texas district court to this Court. (Dkt. No. 50.)

On June 26, 2020, Defendants filed the instant motion for summary judgment repeating the argument that Stephen was never a Plan Participant or Dependent as defined under the Plan; therefore, the Court does not have personal jurisdiction over Defendants. (Dkt. No. 30.) On July 22, 2020, the Court granted Plaintiff's ex parte request to extend time to file a response to the motion for summary judgment in order to conduct discovery pursuant to Federal Rule of Civil Procedure ("Rule") 56(d). (Dkt. No. 39.) Plaintiff filed its opposition on October 26, 2020. (Dkt. No. 60.) On November 6, 2020, Defendants filed their reply. (Dkt. No. 61.)

/ / /

/ / /

**Factual Background**

Colorescience is a small corporation that develops, markets, and sells skin care products and provides medical, dental, vision, and prescription drug benefits to employees and their dependents and these benefits are self-insured by Plaintiff. (Dkt. No. 2-2, Plummer Decl. ¶¶ 2, 3.) Plaintiff is the Plan Administrator of the Colorescience Welfare Benefit Plan. (Dkt. No. 30-1, Ex. 1, Plan at 5.[1])

Deborah Bouche ("Deborah") was employed by Colorescience in Houston, Texas and was a participant in the Plan and is the mother of Defendant Stephen. (Dkt. No. 2-2, Plummer Decl. ¶ 5; Dkt. No. 30-2, Deborah Decl.) Stephen was born on July 30, 1987 and attained the age of 26 on July 30, 2013. (Dkt. No. 60-1, P's Response to Ds' SSUF[2] Nos. 3, 4.) Stephen was never an employee of Colorescience. (*Id.*, No. 2.) He was not covered by the Plan before he reached the age of 26. (*Id.,* No. 5.) He was not mentally or physically incapable of sustaining his own living before the age of 26. (Dkt. No. 30-2, Ex. 2, Deborah Decl. at 2; Dkt. No. 30-3, Ex. 3, Stephen Decl. at 2.) At the time of his slip and fall accident on February 25, 2014, he was over 26 years old. (Dkt. No. 30-2, Ex. 2, Deborah Decl. at 2; Dkt. No. 30-3, Ex. 3, Stephen Decl. at 2.)

In early November 2017, Deborah inquired about coverage for Stephen during the open enrollment period and subsequently applied for enrollment in early December 2017 and Stephen's enrollment became effective January 1, 2018. (Dkt. No. 14-1, Plummer Decl. ¶ 2.) In support of her enrollment application for Stephen, Deborah submitted a Social Security determination finding Stephen disabled as of October 2016, (*Id.*; Dkt. No.

---

[1] Page numbers are based on the CM/ECF pagination.
[2] In contravention of the undersigned Civil Chambers Rules, Defendants did not file a separate statement of material facts with their motion for summary judgment that they contend are undisputed. In the opposition, Plaintiff filed a response to statement of undisputed facts gleaning from the facts presented in Defendants' motion and also provided its own statement of additional facts. (Dkt. No. 60-1.) In reply, Defendants fail to respond to Plaintiff's statement of additional facts. Because Plaintiff did not object to the failure of Defendants to file a separate statement, and despite the violation, the Court considers Defendants' motion for summary judgment.

14-2, Plummer Decl., Ex. 1), and documentation confirming that Stephen's existing coverage with Blue Cross Blue Shield was ending on December 31, 2017. (Dkt. No. 14-1, Plummer Decl. ¶ 2.) This information was submitted to Healthscope, the Plan's third-party administrator, who informed Deborah that Stephen would be enrolled for coverage as her dependent under the Plan effective January 1, 2018. (*Id.*)

Stephen underwent back surgery in February 2018. (Dkt. No. 14-1, Plummer Decl. ¶ 3.) Initial charges and bills from Altus Hospital relating to that surgery were submitted to Healthscope and were in excess of $1.2 million. (*Id.* ¶ 3.) Due to the size of the claims, Healthscope conducted an audit of Stephen's coverage under the Plan. (*Id.* ¶ 4.)

On July 13, 2018, Corey Plummer ("Plummer"), Colorescience's HR Director responsible for overseeing the administration of employee benefit plans, sent an email to Deborah requesting information Healthscope had advised was necessary for it to complete its audit concerning Stephen's eligibility for coverage. (Dkt. No. 14-1, Plummer Decl. ¶ 5; Dkt. No. 14-3, Plummer Decl. Ex. 2.) In apparent response to Plummer's letter, on July 17, 2018, Mr. Nielsen, on behalf of Deborah and Stephen, wrote a letter concerning Plummer's request for information about whether there was a qualifying event to add Stephen on January 1, 2018 and whether he was an incapacitated child. (Dkt. No. 14-4, Plummer Decl., Ex. 3.) Mr. Nielsen attached a copy of the Social Security determination finding Stephen disabled as of October 2016 and a letter dated December 12, 2017 from Blue Cross Blue Shield stating that Stephen's coverage was cancelled on December 31, 2017. (*Id.*)

Plummer then sent two additional emails dated July 17, 2018 and July 24, 2018 requesting further information. (Dkt. No. 14-1, Plummer Decl. ¶ 7.) Mr. Nielsen responded on July 24, 2018 and wrote,

> Any cancellation of coverage with Blue Cross was made in reliance upon representations you and Britt Braham made that Stephen would be covered beginning January 1, 2018 under your health insurance policy. Absent those representations, the policy with Blue Cross would never have been cancelled effective December 31, 2017. As you both knew then, Stephen was found to

> be totally disabled by the Social Security Administration on October 18, 2017, retroactive to October 2016. It appears now that, even though some payments have been made for Stephen's medical care and recent surgery, someone may be trying to rewrite history to try to avoid paying all of the covered medical care and procedures. Is the disability determination by the Social Security Administration not a qualifying event?

(Dkt. No. 14-5, Plummer Decl., Ex. 4 at 2.) Then, in response to Plummer's question requesting documents to support Stephen's "[s]tatus as an incapacitated child on or before age 26", (*id.* at 4), Mr. Nielsen wrote, "Why is the Social Security Administration's official determination not sufficient?" (*Id.* at 2.)

On August 13, 2018, Deborah also responded to Plummer's July 13, 2018 email to her which requested information relevant to the Plan's audit of her son's coverage under the Plan. (Dkt. No. 14-1, Plummer Decl. ¶ 7.) In her response, Deborah stated, among other things, that "Stephen was not incapacitated at the age of 26" and "[t]here is no reason for there to be any further delay in the review showing Stephen is eligible for coverage since nothing has changed from the initial application for coverage and the qualifying event of being classified as disabled by SSI. Preapproving back surgery and then denying coverage after the fact is an unacceptable situation." (Dkt. No. 14-6, Plummer Decl., Ex. 5.)

After these correspondences, the Plan authorized Healthscope to pay the claims for Stephen's back surgeries in February 2018. (Dkt. No. 14-1, Plummer Decl. ¶ 10.) After negotiations, Healthscope paid $430,000 to resolve $1.2 million in charges submitted by Altus. (*Id.*) Healthscope also paid $47,093.98 to other providers. (*Id.*) Therefore, the Plan paid $477,093.98 for Stephen's back surgeries in February 2018. (*Id.*)

The parties do not dispute that the Deborah did not submit documents alleging Stephen was incapacitated before the age of 26. (Dkt. No. 60-1, P's Response to SSUF No. 7.) Deborah and Stephen also both declare that Stephen was not mentally or physically incapable of sustaining his own living before he reached the age of 26. (Dkt. No. 30-2, Ex. 2, Deborah Decl. at 2; Dkt. No. 30-3, Ex. 3, Stephen Decl. at 2.)

In August 2018, after the audit of Stephen's eligibility was concluded, Plummer wrote an explanatory letter to Deborah stating that after re-evaluation, it was determined that "Stephen is not eligible for dependent coverage under the Plan, and that his enrollment for such coverage effective January 1, 2018 was erroneous." (Dkt. No. 30-3, Deborah Decl., Ex. B at 12.) The letter concluded that "because Stephen did not meet the eligibility requirements under the Plan for dependent coverage, the Company is discontinuing his coverage under the Plan effective September 1, 2018." (*Id.* at 13.)

**B.     Analysis[3]**

Defendants' sole argument on summary judgment is that Stephen is not a Plan Participant or Dependent as defined under the Plan. (Dkt. No. 30 at 6-8.) Therefore, he is not subject to the subrogation provision, section 13.02, and the recovery of overpayment provision or reimbursement provision under section 10.06C under the Plan. (*Id.*) Because he is not subject to the Plan, ERISA does not apply to support jurisdiction

---

[3] In support, Plaintiff also relies on the Court's conclusion in the TRO order and motion to dismiss that there were disputed issues of fact whether Defendant Stephen Bouche was a Plan Participant and agreed to the subrogation and reimbursement provisions. (Dkt. No. 60 at 5.) Plaintiff argues that nothing has changed since those Court's orders; therefore, summary judgment should be denied. *(Id.)* The Court's TRO order concluded there were disputed issues of material fact as to whether Defendant Stephen Bouche was a Plan Participant; (Dkt. No. 17 at 7); the applicability of Section 10.06C of the Plan, (*id.* at 9); and whether the February 2018 surgery related to the injuries he suffered from the slip and fall in February 2014. (*Id.*)

The applicability of the two Plan provisions hinges on whether the February 2018 surgery related to the injuries he suffered in February 2014 that was subject of the tort action in Texas state court. At the TRO stage, Defendants raised a disputed factual issue whether the medical expenses incurred in February 2018 was causally related to the slip and fall on February 25, 2014 because Stephen was also involved in a car crash in October 2014. (Dkt. No. 9-4, Nielsen Decl.) In reply, Plaintiff presented evidence that Defendants' assertion about a car accident in October 2014 is inconsistent with the testimony and medical records in the Harris County Tort Action. (Dkt. No. 14 at 2-3, 7-10.) Therefore, this disputed factual issue, in part, barred the TRO. Here, on the motion for summary judgment, Defendants do not challenge that the medical expenses incurred in February 2018 was related to the February 2014 slip and fall accident. Therefore, the Court may now consider whether the subrogation and reimbursement provisions in the Plan are binding on Stephen.

in this case and consequently, the Court lacks personal jurisdiction over the out of state Defendants. (*Id.*)

Plaintiff does not directly challenge Defendants' argument about whether Stephen was a Plan Participant or Dependent as defined under the Plan but responds that Stephen was *enrolled* under the Plan effective January 1, 2018. (Dkt. No. 60 at 14.) Therefore, once enrolled he was "eligible for benefits and accepted benefits under the Plan." (*Id.*) This conclusion applies even though the Plan later concluded that his enrollment had been erroneous and terminated his coverage effective September 1, 2018. (*Id.*) According to Plaintiff, Stephen was subject to the terms of the Plan because Deborah submitted an application to enroll Stephen to the Plan, Stephen accepted benefits under the Plan by informing the medical providers that he was covered under the Plan and authorized the providers to submit the invoices directly to the Plan, and the invoices were ultimately paid by the Plan. Therefore, by accepting the benefits under the Plan, it follows that Stephen was a "dependent eligible for benefits under the Plan" and is bound by the Plan's subrogation and reimbursement provisions and is estopped from denying that he was ineligible for benefits at the time the Plan paid his medical benefits. (Dkt. No. 60 at 15-16.)

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," and an administrator must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. §§ 1102(a)(1), 1104(a)(1)(D). Section 502(a)(3) of the ERISA authorizes plan fiduciaries to bring a civil action "to obtain other appropriate equitable relief . . . to enforce. . . the terms of the plan." 29 U.S.C. § 1132(a)(3). "When a plan fiduciary seeks reimbursement for medical expenses after a plan beneficiary recovers money from a third party, the basis for the fiduciary's claim is equitable." *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Haynes*, 397 F. Supp. 3d 1149, 1156 (N.D. Ill. 2019) (citing *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)). Under § 502(a)(3), a plaintiff can "seek restitution *in equity*, ordinarily in

the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendants' possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis in original). Under ERISA, the terms of the Plan govern. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 106 (2013).

ERISA interpretation disputes are "governed by a *uniform* body of federal law." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (emphasis in original); *Phillips v. Lincoln Nat'l Ins. Co.,* 978 F.2d 302, 307 (9th Cir. 1992) (applying federal common law contract interpretation to interpret ERISA plan). Therefore, the Court interprets ERISA terms "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans,* 916 F.2d at 1441 (quoting *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)). "Courts construe ERISA plans, as they do other contracts, by looking to the terms of the plan as well as to other manifestations of the parties' intent. *U.S. Airways*, 569 U.S. at 102 (internal quotations omitted) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).

In this case, Plaintiff asserts an equitable lien by agreement and "--as its name announces--both arises from and serves to carry out a contract's provisions." *U.S. Airways*, 569 U.S. at 96. In *U.S. Airways*, the Court explained that "enforcing the lien means holding the parties to their mutual promises. Conversely, it means declining to apply rules—even if they would be 'equitable' in a contract's absence—at odds with the parties' expressed commitments." *Id.* at 98 (citations omitted). Therefore, "in an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern. Neither general principles of unjust enrichment nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules—can override the applicable contract." *Id.* at 106 (resolving circuit split on whether equitable affirmative defenses can override the provisions of a plan's reimbursement provision).

In *U.S. Airways*, the Plan beneficiary received a tort settlement related to an injury and the plan administrator of his employer's ERISA plan sought full reimbursement, as provided in the plan, for medical expenses incurred in connection with the injury that was paid out of any funds received by the beneficiary. 569 U.S. at 93. The plan administrator filed a complaint against McCutchen, its beneficiary, for full reimbursement. After paying attorney fees of $44,000, McCutchen was left with $66,000 from the tort settlement, and the plan administrator demanded reimbursement in the amount of $66,866.66, which had been paid in medical expenses and which was more than McCutchen had actually recovered after deduction of attorney fees. *Id.* at 105. The Supreme Court held that McClutchen could not rely on the equitable defense of unjust enrichment as the Plan provision governs an equitable lien by agreement. *Id.* at 106. "The agreement itself becomes the measure of the parties' equities." *Id.* at 99-100. Even the dissent in *U.S. Airways* agreed stating we "agree with Parts I and II of the Court's opinion, which conclude that equity cannot override the plain terms of the [ERISA plan] contract." *U.S. Airways*, 569 U.S. at 106 (J. Scalia, concurring in part and dissenting in part and joined by three Justices).

Here, the Court must look at the terms of the Plan to determine if Plaintiff may seek relief under ERISA which hinges on whether Stephen was a Plan Participant or Dependent as defined under the Plan.

## A.   Subrogation Rights, Section 13.02

The Plan provides for subrogation rights requiring the Plan Participant to reimburse the Plan for medical expenses if the Plan Participant recovers benefits from injuries caused by a third party. The relevant provisions of Section 13.02 of the Plan provide,

> 1. As a condition to participating in and receiving benefits under this Plan, the Plan Participant(s) agrees to assign to the Plan the right to subrogate and pursue any and all claims, causes of action or rights that may arise against any person, corporation and/or entity and to any Coverage to which the Plan

>Participant(s) is entitled, regardless of how classified or characterized, at the Plan's discretion.
>
>2. If a Plan Participant(s) receives or becomes entitled to receive benefits, an automatic equitable lien attaches in favor of the Plan to any claim, which any Plan Participant(s) may have against any Coverage and/or party causing the sickness or injury to the extent of such conditional payment by the Plan plus reasonable costs of collect.

(Dkt. No. 30-1, Ex. 1 at 69.)  However, to be subject to the terms of the Plan, one must be a Plan Participant.  Under the Plan, a Plan Participant "shall mean any Employee or Dependent who is eligible for benefits under the Plan." (*Id.* at 24.)  A Dependent is defined, among other things,

>[a]n Employee's Child who is less than 26 years of age; and
>[a]n Employee's Child, regardless of age, who was continuously covered prior to attaining the limiting age under the bullets above, who is mentally or physically incapable of sustaining his or her own living. Such Child must have been mentally or physically incapable of earning his or her own living prior to attaining the limiting age under the bullets above. Written proof of such incapacity and dependency satisfactory to the Plan must be furnished and approved by the Plan within 31 days after the date the Child attains the limiting age under the bullets above. The time limit for written proof of incapacity and dependency is 30 days following the original eligibility date for a new or re-enrolling Employee. . . .

(*Id.* at 16.)

Defendants argue that this provision does not apply because Stephen was never a Plan Participant or Dependent who was eligible for benefits under the Plan. (Dkt. No. 30 at 9-14.)  Plaintiff does not challenge Defendants' argument that Stephen was not a Plan Participant or Dependent as defined under the Plan[4]; instead, it argues that Stephen is bound by the provisions of the Plan because he was enrolled under the Plan effective

---

[4] In August 2018, after re-evaluation, Plaintiff informed Deborah that Stephen was not eligible as a Dependent as defined under the Plan and would therefore rescind his enrollment effective September 1, 2018. (Dkt. No. 30-3, Deborah Decl., Ex. B at 12.)

January 1, 2018, and once enrolled he was "eligible for benefits and accepted benefits under the Plan." (Dkt. No. 60 at 14.)  The Court notes that Plaintiff has not provided any legal authority to support its claim that an "enrollment" equates to "eligibility" under the Plan.  The Plan, itself, does not define "enrollee" or enrollment." (*See* Dkt. No. 30-1, Ex. 1, Plan.)  Moreover, Section 13.02, by its terms, applies solely to Plan Participants and not enrollees.  In an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern.  *See U.S. Airways*, 569 U.S. at 98-99.  Under the plain terms of the Plan, it is not disputed, and the Court concludes that Stephen was not a Plan Participant or Dependent as defined under the Plan; thus, Stephen is not bound by Section 13.02 of the Plan.

The parties recognize that Stephen was erroneously enrolled under the Plan.  However, the Plan does not provide for subrogation rights due to an erroneous or mistaken enrollment. Though Stephen was erroneously enrolled, he accepted and obtained medical coverage benefits for his back surgery in February 2018 under the Plan.  Based on this, Plaintiff argues that the acceptance and use of the Plan's benefits subject him to the terms of the Plan and Stephen should be estopped from denying that he was ineligible for benefits at the time the Plan paid his medical benefits.  (Dkt. No. 60 at 16.)  Plaintiff is relying on equitable principles to support the relief it seeks; however, equity cannot alter the terms of the Plan.  *See U.S. Airways*, 569 U.S. at 99; *see Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (ERISA's principal function is to "protect contractually defined benefits.").  Accordingly, the Court GRANTS Defendants' motion for summary judgment on the subrogation provision of the Plan.

**B.     Section 10.06C**

Furthermore, Plaintiff asserts that even if coverage of Stephen was a mistake, the Plan provides for recovery of payments made in error under Section 10.06C of the Plan as Stephen was a "'party on whose behalf the charges were paid,' and who is the dependent of Deborah, a Plan Participant." (Dkt. No. 60 at 23.)  Defendants again argue that the reimbursement provision does not apply to Stephen because he was never a Plan

Participant or Dependent as defined under the Plan. (Dkt. No. 30 at 15.) Alternatively, they argue that even if Section 10.06C provides for the right to assert claims from a non-participant, such as Stephen, it would be a legal claim for money damages and not enforceable under ERISA. (*Id.*)

Section 10.06C of Plan provides for the Recovery of Payments and states,

> Occasionally, benefits are paid more than once, are paid based upon improper billing or a misstatement in a proof of loss or enrollment information, are not paid according to the Plan's terms, conditions, limitations or exclusions, or should otherwise not have been paid by the Plan. As such this Plan may pay benefits that are later found to be greater than the Maximum Allowable Charge. In this case, this Plan may recover the amount of the overpayment from the source to which it was paid, primary payers, or from the party on whose behalf the charge(s) were paid. As such, whenever the Plan pays benefits exceeding the amount of benefits payable under the terms of the Plan, the Plan Administrator has the right to recover any such erroneous payment directly from the person or entity who received such payment and/or from other payers and/or the Plan Participant or dependent on whose behalf such payment was made.

(Dkt. No. 30-1, Ex. 1 at 63.)

The parties dispute the meaning of this Section; however, as a threshold issue, the applicability of Section 10.06C requires that the parties be contractually bound to the terms of the Plan. Here, Deborah has not been named as a defendant. As discussed above, the Court concludes that Stephen was not a Plan Participant or Dependent as defined under the Plan; therefore, he is not subject to the terms of the Plan. Accordingly, the applicability of Section 10.06C necessarily fails. Thus, the Court GRANTS Defendants' motion for summary judgment on the reimbursement provision in the Plan.

Because the Plan provisions do not apply to Stephen, the Court GRANTS Defendants' motion for summary judgment on the one cause of action under 29 U.S.C. § 1132(a)(3) under ERISA.

///

///

**Conclusion**

Based on the above, the Court GRANTS Defendants' motion for summary judgment on the complaint.  The Court **vacates** the hearing set on November 20, 2020.

IT IS SO ORDERED.

Dated:  November 16, 2020

Hon. Gonzalo P. Curiel
United States District Judge